"The sales made at said auction by said assignee to his son, Albert U. Shel-don, * * * were not made by him in good faith; nor were said pur-chases made by said Albert U. Sheldon in good faith on his part."

The county court has the power expressly stated in section 20 of chapter 466 of the Laws of 1877, including such other or further powers in respect to the proceedings and the accounting therein as a surrogate may, by law, exercise in reference to an accounting by an executor or administrator. Section 25 of said act also provides:

"Any proceeding under this act shall be deemed for all purposes, including review by appeal or otherwise, to be a proceeding had in the court as a court of general jurisdiction, and the court shall have full jurisdiction to do all and every act relating to the assigned estate, the assignees, assignors and creditors, and jurisdiction shall be presumed in support of the orders and decrees therein unless the contrary be shown; and after the filing or record-ing of an assignment under this act, the court may exercise the powers of a court of equity in reference to the trust and any matters involved there-in."

The court charged the assignee with the items of $1,083.52 and $726 (being the amounts received by his son and daughter, respectively, for assets purchased in their names in excess of the amounts paid for such assets), and set aside and vacated each and every of said sales where the rights of third parties had not intervened.

It is unnecessary for this court to discuss the many questions presented by the appeal of the assignee. The decision of the court includes findings on those several questions, and the evidence is sufficient to sustain such findings. The court had jurisdiction to make the decree, and it is sustained by the findings of fact. It follows that the order removing Orson W. Sheldon as assignee, and appointing an assignee in his place, after due notice, was right.

Decree and order affirmed, with costs to the assignee and to the contesting creditors payable out of the fund remaining in the hands of Orson W. Sheldon as such assignee. All concur.

---

### In re BREWSTER'S ESTATE.

(Supreme Court, Appellate Division, Second Department. May 1, 1902.)

WILLS—DESTRUCTION OF REVOCATORY WILL—REVIVAL—REPUBLICATION.

    Under the statutory provision that if, after the making of any will, the testator shall execute a second will, the destruction of such second will shall not revive the first, unless it appear by the terms of such revocation that it was his intention to revive his first will, or unless, after such destruction, he shall duly republish his first will, the destruction of a will revoking a former one, with intent on the part of testator to revoke the one destroyed, does not revive the former one.

Appeal from surrogate's court, Westchester county.

In the matter of Brewster's estate. Decree of the surrogate denying probate of will affirmed.

The following is the opinion of the court below (SILKMAN, S.):

"The will offered for probate is dated March 16, 1896. The testimony shows that it was signed by the testatrix in the presence of witnesses, and declared by her to be her will, and the witnesses were duly requested to sign as such, and they did so in her presence. All the formalities of the execu-

tion were carefully attended to, and the instrument would be entitled to probate were it not for the fact that in October, 1898, the testatrix had a will drawn by Mr. Thomas Leary, and it was executed by her in the presence of George S. Edgers and William I. Olmsted, as subscribing witnesses. The will was written upon a blank form published by Williamson Law Book Company, publishers, Rochester, N. Y., and entitled "Will (394.)" This form has printed in it the following words: "Hereby revoking all former wills by me made." It also has printed on it a full and complete attestation clause. From the testimony of Mr. Leary, and of the two subscribing witnesses, Olmsted and Edgers, as well as that of Mr. Samuel Watson, who subsequently destroyed the document, at the request of the testatrix, I have no doubt that this instrument of October, 1898, was a valid testamentary document, and properly executed. We thus have an instrument which is sufficient to revoke the paper offered for probate. The testimony of Mr. Watson shows clearly the intention of the testatrix to destroy, and thereby revoke, the second instrument; but this does not reinstate or republish the first. There can be no mistake in the language of the statute: 'If after the making of any will the testator shall duly make and execute a second will, the destruction, cancellation or revocation of such second will shall not revive the first will, unless it appear by the terms of such revocation that it was his intention to revive and give effect to his first will, or unless after such destruction, cancelling and revocation he shall duly republish his first will.' In order to re-establish the first will it must be republished with the same formalities that are required in the execution of a will. These formalities are absent here, and any declarations which the testatrix may have made have no probative force or effect. See In re Stickney's Will, 31 App. Div. 382, 52 N. Y. Supp. 929, affirmed in 161 N. Y. 42, 55 N. E. 396, 76 Am. St. Rep. 246. Let decree and findings be submitted denying probate."

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

John H. Ferguson, for contestant.
Smith Lent, for proponent.

PER CURIAM. Decree affirmed, with costs, on the opinion of the surrogate of Westchester county.

---

(72 App. Div. 82.)

FIRST PRESBYTERIAN CHURCH IN NEW YORK CITY v. KENNEDY.

(Supreme Court, Appellate Division, First Department. May 9, 1902.)

1. COMPLAINT — ORDER TO MAKE MORE DEFINITE — ORAL OR WRITTEN CONTRACT.
   Where a complaint alleged that defendant's intestate contracted to pay during her lifetime, and secure the payment after her death of, a certain annual sum to a church, so long as it should maintain a separate organization and retain its property, an order requiring the complaint to state whether the contract was oral or in writing, and, if the latter, to set forth its substance, was proper.

2. SAME—CONSIDERATION FOR CONTRACT.
   Where a complaint to recover on a contract by which defendant's intestate was alleged to have agreed to pay and secure to a church a certain sum annually so long as it should maintain a separate organization and retain its property, alleged that at the time such proposition was made and accepted the church trustees were considering the sale of the property and removal or consolidation, and would have consummated such removal or consolidation but for such agreement, it was not error to require plaintiff to state whether any formal action had been taken by such trustees, and what was meant by the allegation that